IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CV-573-FL

| | | |
|---|---|---|
| LYNETTE CLEMENTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| TOWN OF SHARPSBURG, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion to dismiss for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6). (DE 13). On its own initiative, the court also considers whether it has subject matter jurisdiction over certain claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3). For the reasons that follow, defendant's motion is granted.

**STATEMENT OF THE CASE**

Plaintiff, a former lieutenant in defendant's police department, initiated this action on November 28, 2018. Plaintiff alleges discrimination and retaliation on the basis of race and sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq., and disability discrimination and retaliation in violation of the Americans with Disability Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101, et seq. Defendant filed the instant motion to dismiss plaintiff's entire complaint. In opposition, plaintiff relies upon a newspaper article from

the Wilson Times discussing her termination.[1]

## STATEMENT OF FACTS

Plaintiff was hired by defendant in 2014, and she served as the only African-American female officer in defendant's police department. (Compl. ¶ 9). In June 2017, plaintiff was diagnosed with an unspecified disability, but continuously and consistently performed all her duties for defendant despite her disability. (Id. ¶ 10).

After John Hunt ("Hunt") became chief of police, plaintiff received different treatment than white male police officers. (Id. ¶ 13). Hunt stripped plaintiff of her supervisory and administrative duties. (Id. ¶ 14). Sergeant Hinson ("Hinson"), a white male, was later promoted in July 2017 to second in command, the position plaintiff formerly held. (Id. ¶ 18). Hinson was paid higher wages than when plaintiff served as second in command. (Id. ¶ 18). He referred to plaintiff as "bitch" without repercussion. (Id. ¶¶ 15). No white employees in the police department would communicate, coordinate or work with plaintiff. (Id. ¶¶ 16-17).

Plaintiff's assigned police vehicle was taken away because it was allegedly needed for second shift, but the male officers assigned to second shift already had vehicles assigned to them. (Id. ¶ 19). After plaintiff turned her vehicle in and it was used by other male officers, plaintiff was disciplined for failing to maintain the vehicle. (Id. ¶ 20). In addition plaintiff was required to submit to a medical fitness for duty evaluation, although her conduct, attendance, and performance did not give rise to the need for such evaluation. (Id. ¶ 21; see EEOC Charge (DE 7-1) at 1).

---

[1] The newspaper article contains statements from plaintiff's former superior claiming defendant did in fact discriminate in terminating plaintiff. "We may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n. 1 (4th Cir.2006)." Sec'y of State For Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007). Plaintiff has neither attached the newspaper article to her pleading, nor has she shown that the article is integral and authentic. Accordingly, the court does not consider the newspaper article at this juncture.

Plaintiff passed her fitness for duty test. (EEOC Charge (DE 7-1) at 1).

Plaintiff was placed on administrative leave on or around September 8, 2017. (Compl. ¶ 23). Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") based upon the discriminatory practices of defendant on or about September 11, 2017. (Id. ¶ 24). Defendant terminated plaintiff on or about January 11, 2018, allegedly for failing to take evidence to the SBI crime lab on time in May 2017. (Id. ¶ 25; EEOC Charge (DE 7-1) at 1). Plaintiff then filed a second charge of discrimination with the EEOC, which she asserts is the basis of the present action. (Compl. ¶ 26; EEOC Charge (DE 7-1) at 1; Right to Sue Letter (DE 7-2) at 1).

## COURT'S DISCUSSION

A.    Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). When the factual predicate of subject matter jurisdiction is challenged, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The party seeking to invoke the court's subject matter jurisdiction "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id.

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

3

Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.   Analysis

Plaintiff's complaint suffers from numerous deficiencies. The court first addresses issues with exhaustion of administrative remedies, then turns to defendant's motion for failure to state a claim.

1.   Failure to Exhaust

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., requires that a plaintiff exhaust administrative remedies before filing suit in federal court. 42 U.S.C. §§ 2000e-5(b), (f)(1). A failure to exhaust administrative remedies deprives the court of subject matter jurisdiction. Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 409 (4th Cir. 2013); Jones v. Calvert Grp., Ltd., 551 F. 3d 297, 300-01 (4th Cir. 2009). Accordingly, the issue is properly analyzed under Rule 12(b)(1). Agolli v. Office Depot, Inc., 548 F. App'x 871, 875 (4th Cir. 2013).

In order to exhaust remedies, an employee must first contact the EEOC and present it with information supporting the allegations. Balas, 711 F.3d at 407 (citing 29 C.F.R. § 1601.6). Typically, the EEOC then will assist the individual in preparing a charge, and sending a notice and copy of the charge to the employer. Id. at 407. This gives the employer an opportunity to voluntarily investigate and resolve concerns internally as the EEOC conducts its own investigation.

Id. If the EEOC finds "reasonable cause to believe that the charge is true," it may seek to eliminate unlawful employment practices through conference, conciliation, and persuasion. Id.; see 42 U.S.C. § 2000e-5(b). The EEOC may file a lawsuit or issue the employee a Notice-of-Right-to-Sue in the event the EEOC fails to reach a voluntary settlement with the employer, or if the EEOC does not find "reasonable cause to believe that the charge is true," or when the employee requests a right to sue. Balas, 711 F.3d at 407; see 29 C.F.R. §§ 1601.27-28.

In Jones, the United States Court of Appeals for the Fourth Circuit considered whether plaintiff exhausted her administrative remedies. 551 F.3d at 299. In that case, plaintiff filed an EEOC charge alleging race, age, and sex discrimination, which was ultimately resolved by written agreement. Id. Shortly thereafter, plaintiff received her first ever negative performance evaluation. Id. In response, she filed a second EEOC charge alleging retaliation. Id. The court held that plaintiff had failed to exhaust her administrative remedies, explaining

> [t]he second charge alleged that Jones was being retaliated against because she had filed the first charge; it did not allege that she was discriminated against based on her age, sex, or race. Indeed, she checked only the "retaliation" box on her EEOC charge and left unchecked the boxes for "age," "sex," or "race."

Id. at 301.

The reasoning in Jones applies to this case as well. The charge of discrimination plaintiff filed with the EEOC checks the box for retaliation, but does not check any of the boxes for race, sex or disability. (See EEOC Charge (DE 7-1) at 1). Plaintiff articulates the basis for the charge, saying "I believe that I have been retaliated against for filing EEOC Charge Number: 433-2017-03171 . . . and because of my disability." (EEOC Charge (DE 7-1) at 1). The date of the alleged discrimination is January 11, 2018, the date plaintiff claims that she was terminated. (EEOC Charge (DE 7-1) at 1). Plaintiff makes no mention of discrimination on the basis of race or sex. (See EEOC

5

Charge (DE 7-1) at 1).

Plaintiff argues that her allegations of discrimination "are still being investigated by the EEOC and no right to sue letter has been issued at [the] time of this brief for that charge number." (Pl. Resp. (DE 15) at 1). This argument is unpersuasive, as plaintiff has the ability to request a right to sue letter and attach it to her complaint in the present action. See 29 C.F.R. § 1601.28(a)(1), (a)(2), (d)(2). The court dismisses these claims without prejudice for lack of subject matter jurisdiction.

2. Retaliation

Plaintiff contends that defendant unlawfully retaliated against her for filing her first EEOC charge. Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action. Coleman, 626 F.3d at 190. "An employee may establish prima facie causation simply by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." Strothers v. City of Laurel, Maryland, 895 F.3d 317, 335–36 (4th Cir. 2018) (internal citation omitted). "This court found a causal connection between a plaintiff's protected activity and her discharge where the employer, with knowledge of a pending discrimination complaint, fired plaintiff approximately four months after the complaint was filed." Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994) (citing Williams v. Cerberonics, Inc., 871 F.2d 452,

454, 457 (4th Cir. 1989)).

"[W]hen a plaintiff has established a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action." E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 407 (4th Cir. 2005). "If the defendant carries this burden, the presumption of retaliation falls, and the plaintiff bears the ultimate burden of proving that the defendant's non-retaliatory reason for the adverse employment action was pretextual." Id. The standards for retaliation applicable to Title VII also apply to the ADA. 29 U.S.C. § 791(f); 42 U.S.C. § 12203(a); see Hooven-Lewis v. Caldera, 249 F.3d 259, 272 (4th Cir. 2001).[2]

Plaintiff alleges she filed an EEOC charge on or about September 11, 2017, which constitutes protected activity. (Compl. ¶ 24). She was terminated from her employment on or about January 11, 2018. (Id. ¶ 25). The charge is sufficiently close in time, approximately four months, to reasonably infer a causal connection between the filing of the charge and adverse employment action. (Id. ¶¶ 24, 25). Therefore, plaintiff has made a prima facie case of retaliation.

Defendant, relying upon plaintiff's own EEOC charge, says that it terminated plaintiff because she failed to take evidence to the state crime lab in May 2017. (See Def. Mem. (DE 14) at 11-12 (citing EEOC Charge (DE 7-1) at 1)). Defendant provides a legitimate non-retaliatory reason for terminating plaintiff. Plaintiff's pleading fails to allege that defendant's stated reason for terminating plaintiff is pretextual.

Plaintiff argues that "[t]he reason given for [p]laintiff's ultimate termination involved alleged mishandling of evidence; however, those claims were not found credible by the Employment

---

[2] It is unclear from the face of plaintiff's complaint if she alleging retaliation on the basis of her disability.

Security Commission[,] which awarded unemployment benefits [to] plaintiff." (Pl. Resp. (DE 15) at 6). While probative of pretext, no such allegation appears in the complaint. Therefore, the court dismisses plaintiff's retaliation claims without prejudice.

3.  Disability Discrimination

To establish a prima facie case of wrongful discharge under the ADA, plaintiff must show "(1) [s]he is within the ADA's protected class; (2) [s]he was discharged; (3) at the time of [her] discharge, [s]he was performing the job at a level that met [her] employer's legitimate expectations; and (4) [her] discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." Haulbrook v. Michelin N. Am., 252 F.3d 696, 702 (4th Cir. 2001). One is within the ADA's protected class if one is "a qualified individual with a disability." 42 U.S.C. § 12112. The ADA defines "disability" as a physical or mental impairment that substantially limits one or more of the major life activities of an individual, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1).

Plaintiff's only allegation regarding her disability is that she "was diagnosed with a disability in June 2017." (Compl. ¶ 10). The court does not find this bare assertion, devoid of factual enhancement, sufficient to state a claim under the ADA. Not only does plaintiff fail to disclose the critical detail of what she was diagnosed with, but she does not allege that her disability substantially limited her in a major life activity.[3] (See id.). Plaintiff does not contest the insufficiency of her allegations regarding her disability. (See Pl. Resp. (DE 15) at 1-6). Plaintiff's disability discrimination claim is dismissed without prejudice.

---

[3] Importantly for determining discriminatory intent, plaintiff also does not allege defendant knew of her disability when it decided to give her a fitness evaluation and later terminate her.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 13) is GRANTED. Plaintiff's claims of race and sex discrimination are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. Plaintiff's remaining claims are DISMISSED WITHOUT PREJUDICE for failure to state a claim. The court GRANTS plaintiff 28 days leave to amend her complaint and correct the deficiencies noted herein.

SO ORDERED, this the 6th day of May, 2019.

LOUISE W. FLANAGAN
United States District Judge