IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CV-573-FL

| | | |
|---|---|---|
| LYNETTE CLEMENTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| TOWN OF SHARPSBURG, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's second motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 20). The issues raised have been fully briefed, and in this posture are ripe for ruling. For the reasons noted, defendant's motion is granted.

**STATEMENT OF THE CASE**

Plaintiff, a former lieutenant in defendant's police department, initiated this action on November 28, 2018. Plaintiff alleges discrimination and retaliation on the basis of race and sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq., and disability discrimination and retaliation in violation of the Americans with Disability Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101, et seq. With leave of court, plaintiff filed her amended complaint on June 3, 2019. Defendant filed the instant motion to dismiss, arguing that plaintiff has failed to state claims of unlawful discrimination or retaliation.

## STATEMENT OF FACTS

Plaintiff was hired by defendant in 2014. (Am. Compl. ¶ 9). She served as lieutenant, and was the only black female officer, in defendant's police department. (Id.). In June 2017, plaintiff was diagnosed with congestive heart failure and diabetes controlled with insulin injections, but "continually and consistently" performed all her duties for defendant despite her disability. (Id. ¶ 11).

After John Hunt ("Hunt") became chief of police, plaintiff received different treatment than white male police officers. (Id. ¶ 10). Hunt stripped plaintiff of her supervisory and administrative duties. (Id. ¶ 13). Sergeant Hinson ("Hinson"), a white male, was later promoted in July 2017 to second in command, the position plaintiff formerly held. (Id. ¶ 17). Hinson was paid higher wages than when plaintiff served as second in command. (Id. ¶ 17). He referred to plaintiff as "bitch" without repercussion. (Id. ¶ 14). No white employees in the police department would communicate, coordinate or work with plaintiff. (Id. ¶¶ 15-16).

Plaintiff's assigned police vehicle was taken away because it was allegedly needed for second shift, but the male officers assigned to second shift already had vehicles assigned to them. (Id. ¶ 18). After plaintiff turned her vehicle in and it was used by other male officers, plaintiff was disciplined for failing to maintain the vehicle. (Id. ¶ 19). On August 29, 2017, plaintiff was required to submit to a medical fitness for duty evaluation, although her conduct, attendance, and performance did not give rise to the need for such evaluation. (Id. ¶ 20; see First EEOC Charge (DE 18-1) at 1). When plaintiff asked Hunt why she was being referred for the Medical Fitness for Duty Evaluation, Hunt allegedly responded, "because you are a female and diabetic." (Am. Compl. ¶ 21). One day later, she was suspended for three days without pay for allegedly listening

to inappropriate music in her assigned vehicle. (Id. ¶ 23).

Plaintiff filed her first charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") based upon the alleged discriminatory practices of defendant on or about September 1, 2017. (Id. ¶ 24). Plaintiff was placed on administrative leave on or around September 8, 2017 pending the results of her Medical Fitness for Duty Evaluation. (Id. ¶ 25). Plaintiff was determined physically fit to return to work, but defendant then required a psychological evaluation prior to her return to work. (Id. ¶ 26). Plaintiff was determined to be psychologically fit for duty as well. (Id. ¶ 27).

Defendant terminated plaintiff on or about January 11, 2018, allegedly for failing to take evidence to the SBI crime lab on time in May 2017. (Id. ¶ 29). While working for defendant, plaintiff requested training and access to the SBI evidence portal, but her request was denied by defendant Hunt. (Am. Compl. ¶ 33; Appeals Decision (DE 18-5); Higher Authority Decision (DE 18-6)). Plaintiff then filed her second charge of discrimination with the EEOC. (Am. Compl. ¶ 34; Second EEOC Charge (DE 18-2) at 1). After plaintiff's second charge was filed, Hunt allegedly said that he "kn[e]w definitively that [plaintiff] was discriminated against by the majority of the Board of Commissioners, who all happen to be Caucasian." (Am. Compl. ¶ 37; Wilson Times Article (DE 18-7) at 1).

**COURT'S DISCUSSION**

A.    Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

3

"Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.  Analysis

1.  Race, Sex, and Disability Discrimination

Title VII makes it unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Similarly, the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

"[I]f a plaintiff is able to produce direct evidence of discrimination, [s]he may prevail without proving all the elements of a prima facie case." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511 (2002); see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 569–70 (2007). "Direct evidence must be 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006) (quoting Taylor v. Virginia Union Univ., 193 F.3d 219,

232 (4th Cir.1999) (en banc) (citation and internal quotation marks omitted)).

"Even if there is a statement that reflects a discriminatory attitude, it must have a nexus with the adverse employment action." Warch, 435 at 520 (citing Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608 (4th Cir.1999)); see Lettieri v. Equant Inc., 478 F.3d 640, 649 (4th Cir. 2007). In Lettieri, the United States Court of Appeals for the Fourth Circuit found direct evidence supported a claim of sex discrimination. 478 F.3d at 649. Defendant's employees rejected plaintiff for promotion, attempted to demote and transfer plaintiff, and terminated her because of their belief that women, including plaintiff, should not live away from home during the work week. Id. In contrast, the court in Warch found no nexus between a statement that a person of similar age and experience to plaintiff would have a hard time getting a job because of his or her age and the decision to terminate plaintiff. 435 F.3d at 520.

This case is more analogous to Warch than Lettieri. The only statement plaintiff relies upon to illustrate discrimination is a comment by Hunt in the Wilson Times that he "kn[e]w definitively that [plaintiff] was discriminated against by the majority of the Board of Commissioners, who all happen to be Caucasian." (Am. Compl. ¶ 36; Wilson Times Article (DE 18-7) at 1). Hunt's generic charge that plaintiff was discriminated against, which relies upon the fact that the majority of the Board of Commissioners "all happen to be Caucasian," amounts to nothing more than a conclusory allegation of discrimination based on the race of Board of Commissioners. See McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015). Such a conclusory statement lacks a sufficient nexus with the adverse employment decision, and thus fails to allege discrimination by way of direct evidence.

"Absent direct evidence, the elements of a prima facie case of discrimination under Title

VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir.2004)). "In determining whether an employee was performing at a level that met the employees legitimate expectations, it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003). However, Title VII "does not require the plaintiff to show that [s]he was a perfect or model employee." Haynes v. Waste Connections, Inc., 922 F.3d 219, 225 (4th Cir. 2019). The prima facie case for a claim of disability discrimination under the ADA requires the same showing as under Title VII. See Haulbrook v. Michelin N. Am., 252 F.3d 696, 702 (4th Cir. 2001).

Here, plaintiff alleges she is an African-American female. (Am. Compl. ¶ 9). She also claims she is a qualified individual under the ADA.[1] (See id. ¶ 11). However, she fails to allege the second requisite element of a prima facie case: satisfactory job performance. Plaintiff alleges that she "continually and consistently performed all her duties for [d]efendant." (Id. ¶ 9). This vague statement does not give rise to a reasonable inference that defendant perceived plaintiff was performing her duties in a satisfactory manner. Plaintiff's own amended complaint indicates that she was disciplined for failing to maintain her vehicle, suspended for three days without pay for allegedly listening to inappropriate music in her vehicle, and terminated for allegedly failing to deliver evidence to the state crime lab on time. (Id. ¶¶ 19, 23, 29). Plaintiff alleges that others

---

[1] The court infers, based on the allegation that Hunt required plaintiff to submit to a fitness for duty evaluation because she was diabetic, that defendant regarded plaintiff as disabled. See Gentry v. E. W. Partners Club Mgmt. Co. Inc., 816 F.3d 228, 238 (4th Cir. 2016) (citing 42 U.S.C. § 12102(3)(A)).

6

were responsible for some of these failings. (See id. ¶¶ 19, 31, 33; Appeals Decision (DE 18-5); Higher Authority Decision (DE 18-6)). However, the higher authority decision plaintiff cites indicates that the evidence issues discovered "while plaintiff was out on leave were due, in part, to the failures of others within the department." (Higher Authority Decision (DE 18-6) at 2 (emphasis added)). Far from absolving plaintiff of wrongdoing, the decision incorporated by plaintiff into the amended complaint indicates she was partly responsible for the alleged failure to preserve evidence. Thus, plaintiff fails to allege her job performance met defendant's legitimate expectations.

Plaintiff's perfunctory response in opposition to defendant's motion to dismiss argues that she detailed that she satisfactorily performed her job duties and was never disciplined regarding the evidence issues cited as the reason for her termination. (Pl. Resp. (DE 26) at 8). For the reasons noted above, the court rejects plaintiff's argument. Plaintiff's claims of race, sex, and disability discrimination are dismissed without prejudice.

2.  Retaliation

Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); see 42 U.S.C. § 12203(a); Hooven-Lewis v. Caldera, 249 F.3d 259, 272 (4th Cir. 2001). As with a claim of discrimination, plaintiff may allege retaliation through direct "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Rhoads v. F.D.I.C., 257 F.3d 373, 391–92 (4th Cir. 2001) (internal

7

quotations omitted).

For the reasons stated above in the court's discussion of plaintiff's discrimination claims, Hunt's statements regarding defendant are insufficient to create a nexus between the filing of plaintiff's charge and plaintiff's termination.

"Absent direct evidence of retaliation, [plaintiff] may . . . mak[e] a prima facie case of retaliation by showing (1) that [s]he engaged in protected activity, (2) that [defendant] took an adverse action against [her], and (3) that the adverse action was causally connected to [her] protected activity." S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cty., 819 F.3d 69, 78 (4th Cir. 2016). The anti-retaliation provision of the Americans with Disabilities Act is interpreted consistently with Title VII precedent. See, e.g., S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty., 819 F.3d 69, 78 (4th Cir. 2016).

"An employee may establish prima facie causation simply by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." Strothers v. City of Laurel, Maryland, 895 F.3d 317, 335–36 (4th Cir. 2018) (internal citation omitted). The "temporal proximity must be very close." See Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (per curiam); King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (finding two and a half months sufficiently long so as to weaken significantly an inference of causation, but enough to make a prima facie case where employment decisions would likely be made at the end of a school year); Williams v. Cerberonics, Inc., 871 F.2d 452, 454, 457 (4th Cir. 1989) (finding plaintiff proved prima facie causation where three and a half months elapsed between the protected activity and the adverse employment action).

Plaintiff does not allege exactly when defendant learned that she had filed her EEOC charge. See Strothers, 895 F.3d at 335–36. Plaintiff filed her first EEOC charge on September 1, 2017. (Am. Compl. ¶ 24). Assuming defendant learned of the charge around the time that plaintiff was placed on administrative leave, it knew plaintiff engaged in protected activity beginning on or around September 8, 2017. (See id. ¶ 25). This means that slightly over four months elapsed between learning of plaintiff's EEOC charge and the decision to terminate plaintiff on January 11, 2018. (See id. ¶ 28).

On reconsideration of its prior order, the court holds plaintiff has failed to demonstrate temporal proximity sufficiently close to raise an inference of causation sufficient to support her retaliation claims. In defining what it means for temporal proximity to be "very close" the United States Supreme Court has previously cited cases from other courts of appeals for the proposition that three- and four-month periods, respectively, were too long to establish a causal link. Clark Cty. Sch. Dist., 532 U.S. at 273–74; see King, 328 F.3d at 151 n.5. Even Williams, the case on which plaintiff relies, only involved a time difference of three and a half months between plaintiff's protected activity and adverse employment decision. See 871 F.2d at 454. Further weakening plaintiff's claim of retaliation is the fact that she was required to submit to a fitness for duty test before she ever filed her first EEOC charge, and that she was placed on administrative leave pending completion of that test. (Am. Compl. ¶¶ 20, 25).

For the reasons noted above plaintiff fails to allege causation, and thus fails to state a claim for retaliation under Title VII and the ADA. Plaintiff's retaliation claims are dismissed without prejudice.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 20) is GRANTED. Plaintiff's Amended Complaint is DISMISSED WITHOUT PREJUDICE for failure to state a claim. Plaintiff is ALLOWED 21 days to file motion to amend, together with proposed second amended complaint, correcting all deficiencies in plaintiff's amended complaint. Should plaintiff fail so to file, the clerk is DIRECTED to close this case without further order from the court.

SO ORDERED, this the 10th day of October, 2019.

LOUISE W. FLANAGAN
United States District Judge